[S. F. No. 15240.   In Bank.—March 21, 1935.]

## CHARLES A. HILL, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Charles A. Hill, *in pro. per.*, for Petitioner.

Philbrick McCoy for Respondent.

PRESTON, ▇▇▇   In proceedings against petitioner before The State Bar of California, a local administrative committee recommended that he be suspended from practice of the law in this state for a period of three years. Thereafter the board of governors adopted the findings of the local committee but recommended that petitioner be disbarred. The cause is before us upon petitioner's application for review.

The charges of serious misconduct are not denied. The question is: What discipline should be imposed upon petitioner? He attributes each and every act of misconduct to the fact that from 1928 to 1932 he was addicted to the

excessive use of intoxicating liquor to such an extent as to deprive him of his normal faculty of clear, honest reasoning. He states that, realizing the gravity of his problem, he voluntarily closed his law office in November, 1932, and has not since practiced; that in said month he was committed to the Stockton State Hospital as an inebriate and was discharged therefrom on June 14, 1933; that a permanent cure was effected; that he is now making every effort to rehabilitate himself and he pleads for leniency.

Petitioner was born in 1889 and admitted to the bar in 1916. From 1924 to 1932 he was attorney for and entrusted with the management of certain interests of the complaining witness, W. J. Whitney. In 1927 he was in financial difficulty and asked Mr. Whitney for a short-term loan of $3,000, to be secured by second trust deed on his home, already encumbered with a $4,750 first mortgage. Mr. Whitney acceded to the request. Petitioner failed to pay the note at maturity, whereupon Mr. Whitney granted him an extension of time to enable him to sell the property. Petitioner thereafter asked for a release of said second trust deed, telling Mr. Whitney that the holder of the first mortgage was threatening foreclosure and that he could not make any deal on the property while it was so heavily encumbered. Mr. Whitney also granted this request, upon the understanding that petitioner would sell or else give him a new note and trust deed. Petitioner was still acting as attorney for Mr. Whitney, who had every confidence in him, and required no title search on the property. The Whitney reconveyance was recorded December 30, 1929. Petitioner later executed to Mr. Whitney another note for $3,000 and paid $150 interest, but never executed a deed of trust.

In January, 1930, he delivered to the son-in-law of the mortgage holder, in partial satisfaction of that encumbrance, a deed to the property. Petitioner claims that this deed was merely given to forestall foreclosure, upon the agreement that he would have eighteen months to find a buyer, or pay the mortgage and have reconveyance, during which period he might continue to occupy the premises at $50 a month rental; that he occupied the place until November 1, 1932, when an appraisal showed it to be worth no more than the mortgage, whereupon he abandoned it. Petitioner claims that he did not profit from execution of the deed,

but rather threw away the chance to occupy the premises rent free during the period of foreclosure proceedings. He states he did not explain to Mr. Whitney, because he did not want to trouble him. Mr. Whitney was then approaching his eightieth year but apparently was possessed of a keen, alert mental capacity for business. In October, 1932, petitioner promised to execute another note to Mr. Whitney to prevent the running of the statute of limitations on the old one. He failed to do so until after these proceedings had been commenced and until after Mr. Whitney had been forced to file an action to preserve his rights, to wit: until October, 1933, when he delivered to Mr. Whitney a new note for $4,278.26, which Mr. Whitney accepted without security upon petitioner's statement that the property was no longer worth the amount of the mortgage and he had no other security therefor.

The facts relative to a second charge against petitioner are as follows: During 1932 petitioner collected for Mr. Whitney the sum of $615.41, disbursed $349.20 for his account, and misappropriated the balance, $266.21, a portion of which he should have used to pay certain taxes on Whitney properties and as a result Mr. Whitney was compelled to pay a delinquency penalty of $30.65. Petitioner likewise, during this period, commingled the Whitney and other trust funds with his own, instead of depositing them in a trust account, a practice which subjected him to severe criticism of The State Bar. After filing of the complaint herein restoration was made to Mr. Whitney of the $266.21 and $30.65 items. Petitioner states that he had no intention of misappropriating said sum; that, in fact, he was robbed thereof during the time he was making the collections because he was in the midst of a protracted spree of heavy drinking. He further states that he could have included in his statement an item of $500 for legal services to Mr. Whitney, in which event it would have shown a credit balance in his favor.

We are not impressed with petitioner's explanations; indeed, he does not himself press them with much vigor. The substance of his plea is that the misconduct occurred because he was in the grip of a vicious habit and that it was the fruitage of that habit, being contrary to his real nature;

that as he is cured, there is no likelihood of further complaint if he is permitted to resume practice.

We hope that these assertions are true. Discipline of an attorney is not merely punitive in character but is designed to protect the public, the courts, and the legal profession; in short to reform the offender or else remove him from practice. (*Marsh* v. *State Bar, ante,* p. 75 [39 Pac. (2d) 403].) If petitioner's reformation has already been effected, why deny him the opportunity to demonstrate this fact? At least we have faith that, now "clothed in his right mind", he will not stray from the path of rectitude.

It is therefore ordered that petitioner herein, Charles A. Hill, be and he is hereby suspended from the practice of law in this state for the period of three years from and after November 20, 1932, the date, the evidence shows, petitioner closed his office.

Seawell, J., Curtis, J., and Langdon, J., concurred.

WASTE, C. J., Dissenting.—I dissent.

The recommendation of the board of governors should prevail.

Rehearing denied.