[L.A. No. 32233. July 16, 1987.]

MICHAEL BERNARD ROSENTHAL, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Michael Bernard Rosenthal, in pro. per., and Theordore A. Cohen for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., Gael T. Infande-Weiss and Arthur Margolis for Respondent.

**OPINION**

**THE COURT.**—The Review Department of the State Bar Court adopted the findings of the hearing referee and unanimously recommended that petitioner Michael Bernard Rosenthal be disbarred. Petitioner claims that disbarment is excessive for two reasons: (1) he did not have a fair opportunity to present a strong defense at the hearing, and (2) extrinsic mitigating evidence demonstrates that he is not a danger to the public. We find these contentions to be without merit and adopt the recommended discipline.

### STIPULATION

Petitioner does not dispute that he committed the offenses underlying the review department's recommendation. In a stipulation negotiated with State Bar Examiner Caryn Espo, petitioner admitted that between August 1981 and August 1983, he misappropriated several thousand dollars belonging to five clients whose personal injury matters he had settled. Petitioner acknowledged that this pattern of activity resulted in five separate violations of rule 8-101 of the Rules of Professional Conduct (wilful failure to maintain client trust account, wilful failure to deliver client funds, and misappropriation), and section 6106 of the Business and Professions Code (wilful commission of acts involving moral turpitude and misconduct in violation of the oaths and duties of an attorney). Petitioner further admitted that during the same time period he failed to pay money owed to his former employer under a fee-sharing arrangement. (Bus. & Prof. Code, § 6106.) Finally, petitioner acknowledged that his delay in relinquishing a file upon demand by the client violated rule 6-101 of the Rules of Professional Conduct (wilful failure to supervise employees).

The stipulation also recommended that petitioner receive six years' suspension, stayed, of which the first two years would be actual suspension, followed by two years of attorney-supervised work and an additional two years of probation. However, six days before the scheduled hearing date, the State Bar's chief trial counsel rejected the stipulation. The parties thereupon

executed a first amended stipulation which was identical to the original one except that it contained no disciplinary proposals. This version was admitted into evidence at the hearing.

## MITIGATION CIRCUMSTANCES

The review department found that petitioner misappropriated client funds in order to finance his cocaine and alcohol addictions. He developed the addictions in May 1981 when his marriage broke up and his law partner left him with an unprofitable caseload. He withdrew from substance abuse in January 1983, but returned to it later that year when his former employer filed suit against him. In February 1985, petitioner admitted himself into a hospital treatment program. During the eight-month period between his discharge from the hospital and the hearing, petitioner regularly attended Alcoholics Anonymous and Cocaine Anonymous meetings. The review department further found that: (1) Petitioner has no prior disciplinary record. (2) Petitioner has been candid and cooperative with the State Bar, and is remorseful. (3) Petitioner made full restitution to the clients from whom he misappropriated funds, but only after disciplinary proceedings had begun. (4) Petitioner's misconduct was the direct result of personal and professional problems. However, petitioner ignored reasonably available solutions to his professional problems and withdrew into substance abuse. (5) Although petitioner has successfully withdrawn from substance abuse as of the hearing date, his continued abstinence is not reasonably assured.

## AGGRAVATING CIRCUMSTANCES

The review department found that petitioner's five acts of misappropriation all involved moral turpitude and directly arose from the practice of law. In addition, stress caused petitioner to revert to substance abuse in January 1983. No substantial showing was made at the hearing that petitioner's ability to cope with stress, pressure or adversity had improved.

## DISCUSSION

Petitioner does not challenge the sufficiency of the evidence to support the State Bar's findings. His sole concern is the severity of the discipline to be imposed.

■ While we exercise our own judgment in determining the appropriate discipline, we attach great weight to the review department's disciplinary recommendation. (*Rossman* v. *State Bar* (1985) 39 Cal.3d 539, 545 [216 Cal.Rptr. 919, 703 P.2d 390].) Petitioner bears the burden of proving that this recommendation is erroneous. (*Ballard* v. *State Bar* (1983) 35 Cal.3d

274, 291 [197 Cal.Rptr. 556, 673 P.2d 226].) ▮ In the absence of strong extenuating circumstances, the proper penalty for repeated acts of misappropriation is disbarment. (*Rimel* v. *State Bar* (1983) 34 Cal.3d 128, 132 [192 Cal.Rptr. 866, 665 P.2d 956].)

I

▮ Petitioner first describes several events which allegedly deprived him of the opportunity to present relevant mitigating evidence. Specifically, he claims that during the eight-month period before the hearing, he reasonably believed that a settlement had been reached and that he need not prepare a defense. When the stipulation was rejected six days before the scheduled hearing date, petitioner felt he had "no choice" but to sign the amended stipulation and present a "bare bones" case. In doing so, he relied on Examiner Espo's assurance that she would encourage the referee to adopt the discipline set forth in the original stipulation. After the referee rejected the examiner's recommendation in favor of disbarment, petitioner requested leave to present additional evidence. Petitioner insists that the denial of this motion culminated a hearing process which was "fundamentally unfair."

This scenario inaccurately portrays petitioner as a victim of procedural circumstance. He does not allege that the examiner or any other State Bar representative misled him into believing that a final settlement had been reached or that disbarment was impossible. In fact, petitioner's own admissions reveal that he had every reason to believe that thorough case preparation was necessary. He concededly knew that the stipulation was only a tentative agreement subject to the chief trial counsel's approval. (See State Bar Rules of Procedure, rules 406, 407 [stipulation subject to approval of chief trial counsel and hearing referee].) He also knew that if the stipulation was rejected, the full burden of presenting any relevant mitigating factors fell on him. (See *Barreiro* v. *State Bar* (1970) 2 Cal.3d 912, 925 [88 Cal.Rptr. 192, 471 P.2d 992].) Petitioner's entire argument rests on nothing more than his admittedly "naive" assessment of the severity and complexity of the hearing process. The blame for any deficiencies in the defense therefore rests exclusively with him. (See *Yokozeki* v. *State Bar* (1974) 11 Cal.3d 436, 445-447 [113 Cal.Rptr. 602, 521 P.2d 858].)

Moreover, all potentially mitigating evidence was presented at the hearing. Petitioner testified in detail about the marital and professional problems leading up to his drug and alcohol addictions. He also expressed remorse over his past conduct, and described the various programs he was following to control his addictions. A total of three witnesses, including petitioner, testified that full restitution was made to each damaged client, and that petitioner's admission into a hospital treatment program was voluntary.

Letters from five community members further established that petitioner had prospered under the guidance of the various support groups he had joined. In short, the State Bar was fully apprised of the essential facts which petitioner believes mitigate his conduct. The evidence simply was not viewed as favorably as petitioner would have liked.

## II

■ Petitioner next contends that disbarment is too severe in light of his efforts to rehabilitate himself. He is convinced that this court will reject the recommended discipline if we have more recent information on his lifestyle and work product. Accordingly, he asks us to consider numerous letters, psychiatric evaluations, and legal documents which were not part of the proceedings below but which he claims demonstrate his present fitness to practice law.[1]

■ In general, this court does not consider evidence which was not presented to the State Bar during its review process. We are particularly wary of extrinsic evidence consisting of "opinions about petitioner's mental attitude [that are] based largely on petitioner's own out-of-court statements. Such evidence is virtually impossible to evaluate in the absence of cross-examination." (*In re Possino* (1984) 37 Cal.3d 163, 171, fn. omitted [207 Cal.Rptr. 543, 689 P.2d 115].) Petitioner's documents are inherently unreliable under this test. The letters and reports merely reflect personal beliefs in petitioner's continued recovery, and are based exclusively upon conversations or interviews with him. Additionally, the legal documents which petitioner has submitted as recent examples of his work do not address the critical question of whether he is likely to repeat his misconduct.

■ In any event, the new evidence does not compel a lesser discipline. ■ Although recovery from substance abuse is a proper factor for this court to consider in reaching its decision (*Tenner* v. *State Bar* (1980) 28 Cal.3d 202, 207 [168 Cal.Rptr. 333, 617 P.2d 486]), protection of the public is our foremost concern. (*Tarver* v. *State Bar* (1984) 37 Cal.3d 122, 133 [207

---

[1] Petitioner provides us with several dozen letters, most of which were written by individuals who met petitioner at Cocaine and/or Alcoholics Anonymous meetings and feel that he is reformed. The other letters were written by lawyers or friends who know of petitioner's addictions and similarly believe that his rehabilitative efforts are sincere. Petitioner also has submitted four psychological evaluations which essentially predict that petitioner can remain sober if he continues to monitor himself. The last category of extrinsic evidence includes various legal documents drafted by petitioner after he sought medical treatment in February 1985.

Cal.Rptr. 302, 688 P.2d 911].) ■ Petitioner has failed to demonstrate a meaningful and sustained period of successful rehabilitation. Virtually all of the new evidence was prepared in July and August 1986, nine or ten months after the hearing. At best, petitioner has established only an 18-month period of sobriety between the time he first admitted himself into the hospital and the time this new evidence came to light. (Cf: *Waysman* v. *State Bar* (1986) 41 Cal.3d 452, 459 [224 Cal.Rptr. 101, 714 P.2d 1239] [over three years successful treatment of an alcohol problem and presence of other mitigating facts justify probation under rigorous conditions].) Also, any significance which might otherwise be attached to this 18-month period is diminished by petitioner's return to substance abuse during a prior period of reform. Although petitioner's efforts are commendable, he has not sufficiently demonstrated that his addictions are permanently under control.

The remaining factors which petitioner urges us to consider are, as a whole, equally unimpressive. We favorably note that he has cooperated with the State Bar and expressed regret over the harm he has caused. (*Bradpiece* v. *State Bar* (1974) 10 Cal.3d 742, 748 [111 Cal.Rptr. 905, 518 P.2d 337].) However, little significance can be attached to his claims of restitution. His return of client funds after the State Bar's investigation had begun is entitled to no weight in mitigation. (*Fitzpatrick* v. *State Bar* (1977) 20 Cal.3d 73, 88 [141 Cal.Rptr. 169, 569 P.2d 763].) His repayment efforts are also tarnished by the fact that he admitted taking money from one client to pay back another. Finally, we find no comfort in petitioner's lack of a disciplinary record. Since his pattern of misconduct began only three and a half years after he was admitted to the bar, a blemish-free record is not surprising. (See *In re Bloom* (1977) 19 Cal.3d 175, 179 [137 Cal.Rptr. 168, 561 P.2d 258].)

On this record, we conclude that our goal of protecting the public and the profession can be met only if "petitioner is required to undergo the evaluation process of a proceeding for reinstatement before he is again permitted to practice law. [Fn. omitted.]" (*In re Duggan* (1976) 17 Cal.3d 416, 424 [130 Cal.Rptr. 715, 551 P.2d 19].) We therefore adopt the review department's recommendation that petitioner be disbarred.

Accordingly, it is ordered that Michael Bernard Rosenthal be disbarred from the practice of law and that his name be stricken from the roll of attorneys. The order is effective 30 days after the filing of this opinion. It is further ordered that petitioner comply with rule 955 of the California Rules of Court, and that he perform the acts specified in subdivisions (a) and (c) of

that rule within 30 and 40 days, respectively, after the effective date of this order.