[No. S005429. Apr. 3, 1989.]

RICHARD J. TWOHY, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

Richard Judson Twohy, in pro. per., for Petitioner.

Diane C. Yu, Truitt A. Richey, Jr., and Phyllis J. Culp for Respondent.

OPINION

THE COURT.* —We review the unanimous recommendation of the Review Department of the State Bar Court that petitioner, Richard J. Twohy, be disbarred. Petitioner contends that the recommendation of disbarment is excessive in light of the mitigating factor of his addiction to "crack" cocaine and his alleged recovery from such addiction subsequent to the incidents upon which the review department's recommendation is based. Because the record does not establish that petitioner has fully recovered from his cocaine addiction and since the review department properly considered the mitigating and aggravating evidence presented in the case, we reject petitioner's contentions, adopt the review department's findings and impose its recommendation of disbarment.

I.

Petitioner was admitted to the practice of law in California on January 23, 1973. He has twice previously been disciplined for misconduct. On March 21, 1984, he was ordered suspended for three years. The suspension was stayed and petitioner was placed on three years' probation. The terms of probation included quarterly reporting to a probation monitor, taking and passing the professional responsibility examination within one year, and restitution of client funds within one year of April 20, 1984. (Bar Misc. No. 4695.) On November 15, 1984, in a separate disciplinary matter, petitioner was ordered suspended for 30 days. That suspension was also stayed and a

---

*Before Lucas, C. J., Mosk, J., Broussard, J., Panelli, J., Eagleson, J., Kaufman, J., and Anderson (Carl W.), J.†

†Presiding Justice, Court of Appeal, First Appellate District, Division Four, assigned by the Chairperson of the Judicial Council.

three-year probation was ordered to run concurrent with probation in Bar Miscellaneous No. 4695. (Bar Misc. No. 4820.)

Petitioner failed to take and pass the professional responsibility examination as ordered. Consequently, his probation was revoked and he was suspended on May 17, 1985. Ten months later, petitioner passed the examination, and the order of suspension was vacated.

During the period of suspension, however, petitioner represented a defendant in a criminal matter, and as a result he was subsequently convicted of the unlawful practice of law. (Bus. & Prof. Code,[1] §§ 6125, 6126.) We referred the conviction to the State Bar for its report and recommendation as to whether the offense involved moral turpitude. The State Bar Court concluded that petitioner's willful misrepresentation to the court that he was a person entitled to practice law did involve moral turpitude. (Bar Misc. No. 5144.) On July 29, 1987, we acted upon that report and suspended petitioner from the practice of law pending final disposition of his appeal of the section 6125 conviction.[2]

Two weeks prior to his being placed on interim suspension, however, we found petitioner had not complied with the reporting and monitoring terms of either of the two probations. Accordingly, we revoked probation and ordered petitioner suspended for the combined period of three years and thirty days, effective August 14, 1987. (Bar Misc. No. 4695; Bar Misc. No. 4820.) Thus, petitioner is currently on suspension from the practice of law until September 13, 1990.

■ ■■■■ Petitioner contends the two prior disciplinary matters (Bar Misc. No. 4695; Bar Misc. No. 4820) were the products of unfair hearings[3]

---

[1] All further statutory references are to the Business and Professions Code unless otherwise indicated.

[2] On December 2, 1987, the conviction was reversed. In its unpublished opinion reversing the conviction, however, the Appellate Department of the Solano County Superior Court noted that the "matter must be retried" and found that "the statute in question, Business and Professions Code Section 6125, is an offense [for] which . . . the doctrine of strict criminal liability applies. [Citations.]" Thus, we may assume petitioner is still subject to prosecution and conviction for the unlawful practice of law.

[3] Petitioner asserts the hearings in these matters were infirm because judgment "was rendered by persons with an inherent conflict of interest; that is, fellow members of the Bar [*sic*] themselves potentially subject to disciplinary proceedings at the instance of the State Bar examiners." In the context of other professions, however, we have found no infirmity with professional peers serving in regulatory functions, so long as they are provided with sufficient standards "to contain and guide the exercise of delegated power. . . ." (*Wilke & Holzheiser, Inc.* v. *Dept. of Alcoholic Bev. Control* (1966) 65 Cal.2d 349, 367 [55 Cal.Rptr. 23, 420 P.2d 735]; *Allen* v. *California Board of Barber Examiners* (1972) 25 Cal.App.3d 1014, 1018 [102 Cal.Rptr. 368, 54 A.L.R.3d 910].) Since petitioner has not challenged the standards which govern attorneys serving as hearing panel members, we need not address that issue. We sim-

and thus should not be considered in determining the appropriate sanction for the instant matter. Petitioner's challenges to the prior disciplinary hearings, however, are no longer cognizable.

In Bar Miscellaneous Nos. 4695 and 4820, petitioner failed to petition this court for review. When, as we did in these matters, we have issued an order pursuant to a disciplinary recommendation by the State Bar and no petition for review has been timely filed, a disciplined attorney's only recourse is to file a petition for rehearing within 15 days of the filing of the decision, pursuant to California Rules of Court, rule 27. (§ 6084.) Petitioner, having failed to petition for rehearing in Bar Miscellaneous Nos. 4695 and 4820, is thus precluded from otherwise challenging these decisions which have long been final. ■ Accordingly, we consider petitioner's prior discipline as an aggravating factor in determining the disciplinary sanction appropriate to the instant matter. ■ ■■■■ (Rules Proc. of State Bar, div. V, Standards for Atty. Sanctions for Prof. Misconduct, stds. 1.2(b)(i), 1.7.)[4]

We proceed to a discussion of the matter now before us. ■ As in all attorney disciplinary matters, we independently examine the record, reweigh the evidence and pass on its sufficiency. (*Franklin* v. *State Bar* (1986) 41 Cal.3d 700, 708 [224 Cal.Rptr. 738, 715 P.2d 699]; *Codiga* v. *State Bar* (1978) 20 Cal.3d 788, 796 [144 Cal.Rptr. 404, 575 P.2d 1186].) ■ In so doing, the findings of the State Bar are entitled to great weight and it is the petitioner's burden to show the findings are not supported by the record. (*Coppock* v. *State Bar* (1988) 44 Cal.3d 665, 677 [244 Cal.Rptr. 462, 749 P.2d 1317].)

The instant proceeding was initiated by a notice to show cause issued on January 14, 1987, charging petitioner with (a) wrongdoing in the course of his representation of Brian D. Runke and (b) failure to cooperate with the State Bar in its investigation of the Runke matter. The hearing panel made findings and recommended that petitioner be disbarred. Petitioner failed to request review of this recommendation and the review department, pursuant to Rules of Procedure of the State Bar, rule 450(b), issued an ex parte resolution adopting the decision of the hearing panel on December 16, 1987.

---

ply note that there is nothing inherently improper in professional peers serving as hearing officers.

[4] All references to standards are to the Standards for Attorney Sanctions for Professional Misconduct of the Rules of Procedure of the State Bar. The standards are not binding on us but we may nevertheless consider them in assessing the appropriate sanctions for misconduct. (*Segal* v. *State Bar* (1988) 44 Cal.3d 1077, 1087 [245 Cal.Rptr. 404, 751 P.2d 463].)

## A. *The Runke Matter*

In July 1984, Brian D. Runke retained petitioner to defend him against drunk driving charges. Runke paid petitioner a total of $725 as retainer. Petitioner represented Runke in the Department of Motor Vehicle administrative proceedings and at the municipal court trial-setting conference on August 24, 1984. At that conference, Runke's matter was set for hearing on October 3, 1984. Petitioner failed, however, to advise Runke of the October 3 hearing.

On the hearing date, neither petitioner nor Runke was present in court and a bench warrant issued for Runke's arrest. Runke received the bench warrant in the mail ordering him to appear in court on October 11, 1984. Runke advised petitioner of this date.

On October 11, 1984, Runke appeared in court, but petitioner did not. Runke telephoned petitioner, who said he would come to court, but he did not. Accordingly, the court ordered Runke to discharge petitioner and to accept a public defender at that time.

Runke was thereafter unable to contact petitioner. After making numerous unsuccessful attempts to reach petitioner by telephone, Runke sought and obtained a $700 award against petitioner in a local bar association arbitration proceeding. Although aware of the arbitration award, and in spite of Runke's written demand, petitioner did not pay anything to Runke or reply in any manner. Runke then filed an action in small claims court against petitioner, but was unable to locate petitioner to serve the complaint. Subsequently, the State Bar initiated its investigation.

In late October or early November of 1986, Runke spoke with petitioner on the telephone and was told that he would be receiving a check from petitioner. Shortly thereafter, Runke received a check for $700 and so informed the State Bar.

Accordingly, the hearing panel concluded that petitioner had: (a) failed to communicate with Runke, or to keep Runke reasonably informed of court dates and the significant progress of the matter for which petitioner was retained, in violation of section 6068[5] and State Bar Rules of Profession-

---

[5] Section 6068, subdivision (m) provides that "It is the duty of an attorney to . . . respond promptly to reasonable status inquiries of clients and to keep clients reasonably informed of significant developments in matters with regard to which the attorney has agreed to provide legal services."

al Conduct,[6] rules 6-101(A)(2)[7] and 6-101(B)(1)[8] ; (b) failed to take timely action and to appear at scheduled court appearances on Runke's behalf in the criminal matter pending against Runke in violation of section 6103[9] and rule 2-111(A)(2)[10]; and (c) willfully failed, when discharged by Runke, to return the advance fee of $725 paid to petitioner by Runke, $700 of which had not been earned, in violation of rule 2-111(A)(3).[11] The panel further found that these violations constituted acts of moral turpitude. Petitioner has not challenged these findings and we adopt them.

### B. *Failure to Cooperate With the State Bar*

In its investigation of Runke's complaint, the State Bar sent two letters to petitioner informing him of the complaint and requesting his response. The letters were sent to petitioner's address on file with the State Bar and neither was returned as undeliverable by the post office. Nonetheless, petitioner failed to respond to either letter or to cooperate with the State Bar in its investigation of Runke's complaint.[12]

The hearing panel therefore concluded that petitioner had failed to cooperate and participate in the State Bar's investigation of the matters alleged in this proceeding against petitioner, in violation of section 6068, subdivision (i)[13] and section 6103.[14] Petitioner has not challenged these findings and we adopt them.

---

[6] All further rule references are to the Rules of Professional Conduct unless otherwise specified.

[7] Rule 6-101(A)(2) provides that "[a] member of the State Bar shall not intentionally or with reckless disregard or repeatedly fail to perform legal services competently."

[8] Rule 6-101(B)(1) prohibits an attorney, without "associat[ing] or, where appropriate, professionally consult[ing] another lawyer who the member reasonably believes is competent . . . [from] . . . [a]ccept[ing] employment or continu[ing] representation in a legal matter when the member knows that the member does not have, or will not acquire before performance is required, sufficient time, resources and ability to, perform the matter with competence. . . ."

[9] Section 6103 provides "A wilful disobedience or violation of an order of the court requiring him to do or forbear an act connected with or in the course of his profession, which he ought in good faith to do or forbear, and any violation of the oath taken by him, or of his duties as such attorney, constitute causes for disbarment or suspension."

[10] Rule 2-111(A)(2) prevents an attorney from withdrawing "from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to his client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules."

[11] Rule 2-111(A)(3) provides that "[a] member of the State Bar who withdraws from employment shall refund promptly any part of a fee paid in advance that has not been earned. . . ."

[12] Since the notice to show cause was issued in this matter, however, petitioner has cooperated with the State Bar.

[13] Section 6068, subdivision (i) requires an attorney "[t]o cooperate and participate in any disciplinary investigation or other regulatory or disciplinary proceeding pending against the attorney. . . ."

[14] *Ante*, footnote 9.

## C. *Mitigating Evidence*

### 1. *Petitioner's Cocaine Addiction*

Petitioner testified to being under the influence of cocaine since "1980 or '81," and that he was using cocaine during the time of his misconduct in the Runke matter. Since April of 1987, petitioner has voluntarily participated in a treatment program consisting of weekly individual counseling sessions and participation in Cocaine Anonymous meetings.

Petitioner's drug counselor in the treatment program has written letters attesting to petitioner's satisfactory and consistent participation in the program and the progress petitioner has made in controlling his addiction. The counselor did not testify at petitioner's hearing, however, and was thus unavailable for cross-examination. Moreover, at his hearing, petitioner testified that no specific time prognosis could be advanced for his successful recovery from cocaine addiction. ■ ■ ■ ■ The hearing panel and the review department thus properly considered petitioner's drug addiction and efforts at rehabilitation in the light of his then as yet incomplete recovery.[15]

### 2. *Restitution of Unearned Fees*

The record establishes that petitioner arranged to return to Runke the unearned portion of Runke's retainer. Further, petitioner has attached to his petition a letter indicating payment of restitution to the clients involved in a matter giving rise to prior discipline. (Bar. Misc. No. 4695.) ■ Making restitution for acts of misconduct may be considered as a factor in mitigation (see std. 1.2(e)(viii)), but generally only when timely made. (*Ibid.*) In this case, petitioner made restitution only after disciplinary proceedings were initiated and in response to court order. Thus, the State Bar Court properly considered petitioner's lack of timeliness as a factor reducing the mitigating weight of his payment of restitution.

## II.

The review department recommends disbarment. "It is serious misconduct to willfully fail to perform the services for which the attorney is

---

[15] Immediately prior to oral argument, in the context of an "amended" petition for review, petitioner submitted a letter written by his substance abuse counselor reporting that "he has fully consolidated his recovery." While we commend petitioner for his successful efforts, and encourage him to continue with his recovery, nevertheless orderly procedure requires that we not consider evidence that has not been subjected to scrutiny by the State Bar Court. (*Rosenthal* v. *State Bar* (1987) 43 Cal.3d 658, 663 [238 Cal.Rptr. 394, 738 P.2d 740]; see *Johnson* v. *State Bar* (1935) 4 Cal.2d 744, 753 [52 P.2d 928].)

retained [citation] as it is to willfully fail to communicate with the client [citation] and to fail to refund unearned fees [citations]." (*Mepham* v. *State Bar* (1986) 42 Cal.3d 943, 949-950 [232 Cal.Rptr. 152, 728 P.2d 222].) ■ "[H]abitual disregard by an attorney of the interests of his or her clients combined with failure to communicate with such clients constitute acts of moral turpitude justifying disbarment. [Citations.]" (*McMorris* v. *State Bar* (1983) 35 Cal.3d 77, 85 [196 Cal.Rptr. 841, 672 P.2d 431].) ■ Clearly, disbarment is authorized in cases of misconduct such as petitioner's. The question before us is therefore whether disbarment here is appropriate.

■ While we exercise our own judgment in determining the appropriate discipline, we nevertheless attach great weight to the review department's disciplinary recommendation. (*Rossman* v. *State Bar* (1985) 39 Cal.3d 539, 545 [216 Cal.Rptr. 919, 703 P.2d 390].) Further, petitioner bears the burden of proving that this recommendation is erroneous. (§ 6083, subd. (c); *Ballard* v. *State Bar* (1983) 35 Cal.3d 274, 291 [197 Cal.Rptr. 556, 673 P.2d 226].) ■ Because the primary purpose of attorney discipline is the protection of the public, the profession and the courts, as opposed to punishment of the attorney (*In re Severo* (1986) 41 Cal.3d 493, 500 [224 Cal.Rptr. 106, 714 P.2d 1244]), we must consider any applicable mitigating or aggravating circumstances (*Tarver* v. *State Bar* (1984) 37 Cal.3d 122, 133 [207 Cal.Rptr. 302, 688 P.2d 911]), and recognize any factors "which at once afford some explanation of [petitioner's] conduct, allow further assessment of his character in the light of his . . . behavior and all in all have a significant mitigating effect on the charges now before us." (*In re Kreamer* (1975) 14 Cal.3d 524, 531 [121 Cal.Rptr. 600, 535 P.2d 728].)

■ In his petition for review, petitioner contends that since all of the matters for which he has been disciplined, including the Runke matter, "occurred during, and as a result of, a period of addiction to 'crack' cocaine . . . [t]hey ought not to be treated as separate incidents" warranting disbarment.

While petitioner's addiction undoubtedly contributed to his commission of the acts of misconduct for which he has been disciplined, the progressively significant consequences of each disciplinary matter should have alerted petitioner to the seriousness of his addiction. By his own testimony, it took petitioner six to seven years, during which he was involved in numerous legal and professional disciplinary problems, to realize he was in trouble with drugs and that he needed help. Given petitioner's history of avoiding confronting his drug problem, it would be irresponsible for us to condone such avoidance and reward petitioner for ignoring for so long such a pervasive problem as his addiction to cocaine.

██ Moreover, even if we were to consider all of petitioner's acts of misconduct during his addiction as part of an extended single incident, such consideration would not support petitioner's request for less severe discipline. The record clearly establishes that petitioner has, while acting in the capacity of attorney: previously (a) failed to use reasonable diligence in representing his clients' interests; (b) made false representations to his clients regarding settlement of their cases; (c) willfully failed to communicate with his clients; (d) willfully failed to return unearned fees and client funds; (e) commingled client funds; (f) failed to return client files and documents when requested (see Bar Misc. No. 4695; Bar Misc. No. 4820); and in this matter (g) willfully failed to perform legal services which he had agreed to perform; (h) willfully failed to appear in court on a client's behalf; (i) willfully caused prejudice to the client by such conduct; (j) refused to make restitution of an unearned retainer pursuant to court order; and (k) failed to cooperate and participate in the State Bar investigation of a complaint. Therefore, petitioner's "record evidences a serious pattern of misconduct involving recurring types of wrongdoing" (*Garlow* v. *State Bar* (1988) 44 Cal.3d 689, 711 [244 Cal.Rptr. 452, 749 P.2d 1307]) which clearly warrants disbarment in the absence of the most compelling mitigating circumstances. (*Ibid.*; stds. 2.3, 2.4; see *McMorris* v. *State Bar, supra,* 35 Cal.3d 77; *Schullman* v. *State Bar* (1976) 16 Cal.3d 631 [128 Cal.Rptr. 671, 547 P.2d 447]; *Ridley* v. *State Bar* (1972) 6 Cal.3d 551 [99 Cal.Rptr. 873, 493 P.2d 105]; *Simmons* v. *State Bar* (1970) 2 Cal.3d 719 [87 Cal.Rptr. 368, 470 P.2d 352].) Thus, whether treated as a single incident or multiple instances of prior discipline, the review department's recommendation of disbarment is well substantiated.

██ Further, while we generally treat an attorney's alcoholism or drug addiction as a mitigating factor in disciplinary proceedings (*In re Nadrich* (1988) 44 Cal.3d 271 [243 Cal.Rptr. 218, 747 P.2d 1146]; *Rosenthal* v. *State Bar, supra,* 43 Cal.3d 658; *In re Possino* (1984) 37 Cal.3d 163 [207 Cal.Rptr. 543, 689 P.2d 115]; *Waysman* v. *State Bar* (1986) 41 Cal.3d 452 [224 Cal.Rptr. 101, 714 P.2d 1239]; *Demain* v. *State Bar* (1970) 3 Cal.3d 381 [90 Cal.Rptr. 420, 475 P.2d 652]), there appears to be no precedent, and petitioner has not provided any compelling reason, for considering an attorney's multiple acts of misconduct during a period of drug addiction as a single incident for purposes of determining the appropriate disciplinary sanctions to impose. ██ Consequently, we will consider whether petitioner's cocaine addiction and rehabilitative efforts are such compelling mitigating factors that rejection of the review department's recommendation of disbarment would be appropriate. We conclude they are not.

██ While we have considered drug or alcohol abuse to be mitigating factors in circumstances where drug addiction or alcohol dependency devel-

oped in response to some significant extrinsic or traumatic event (*In re Nadrich, supra,* 44 Cal.3d at p. 277 [drug addiction as result of legitimate medical treatment]; *Waysman* v. *State Bar, supra,* 41 Cal.3d at p. 457 [alcohol dependency in response to difficult divorce]), we have been hesitant to consider substance abuse as a mitigating factor when caused by stress (*Rosenthal* v. *State Bar, supra,* 43 Cal.3d at p. 661) or psychological disturbance (*In re Possino, supra,* 37 Cal.3d at p. 171). Indeed, the standards expressly exclude any mitigating effect for "extreme emotional difficulties" experienced as a product of illegal drug or substance abuse. (Std. 1.2(e)(iv).)

 Petitioner has failed to present any compelling reasons to support his request that we consider his cocaine addiction as a significant, compelling factor in mitigation. The record is void of evidence of any traumatic or significant event, or indeed, any explanation at all as to the cause of petitioner's addiction. Consequently, we do not view petitioner's addiction as a compelling mitigating factor justifying less severe discipline.

 We have in the past also considered as a substantial mitigating factor evidence showing that an attorney has "earnestly and successfully engaged in a strenuous rehabilitation effort. . . ." (*Tenner* v. *State Bar* (1980) 28 Cal.3d 202, 207 [168 Cal.Rptr. 333, 617 P.2d 486].) In this case, petitioner voluntarily enrolled in a drug treatment program in April 1987, and has apparently successfully completed the program. (*Ante,* fn. 15.) Such efforts at rehabilitation are commendable, and we acknowledge the sincere effort petitioner has made and encourage him to maintain his efforts.

 Nevertheless, our principal objective in disciplining attorneys is to protect the public. To achieve this goal, when an attorney asserts, as does petitioner, that his history of misconduct stems from drug addiction, petitioner must prove that the risk of continued substance abuse causing future acts of misconduct is virtually nonexistent. Unfortunately, in this case petitioner has not met his burden.

Although he asserts in his petition for review that he is recovered from his addiction, the record is notably void of any evidence at his hearing demonstrating his stable recovery. Generally, we will "not consider evidence which was not presented to the State Bar during its review process," particularly when such extrinsic evidence consists of petitioner's own out-of-court statements about his state of mind. (*Rosenthal* v. *State Bar, supra,* 43 Cal.3d at p. 663 [quoting *In re Possino, supra,* 37 Cal.3d at p. 171].) At his hearing, petitioner was unable to predict when, or if, he would fully recover from his addiction.

Further, even if we were to rely on the letter written by his substance abuse counselor (*ante*, fn. 15), it indicates that petitioner completed his treatment only as of January 10, 1989. Thus, under the most favorable of circumstances, petitioner became rehabilitated only two months prior to oral argument.

In the absence of reliable evidence that a "long-standing addiction is permanently under control" (*Gary* v. *State Bar* (1988) 44 Cal.3d 820, 828 [244 Cal.Rptr. 482, 749 P.2d 1336]), or demonstration of "a meaningful and *sustained* period of successful rehabilitation" (*Rosenthal* v. *State Bar, supra,* 43 Cal.3d at p. 664, italics added [18 months of sobriety insufficient to demonstrate control of addiction]), we have not found incomplete or short-term efforts at rehabilitation sufficiently compelling to warrant reducing the severity of disciplinary sanctions recommended by the State Bar Court. (See *Gary* v. *State Bar, supra,* 44 Cal.3d 820; *Rosenthal* v. *State Bar, supra,* 43 Cal.3d 658.) Thus, petitioner's short period of rehabilitation, particularly when compared with the relatively long period of addiction, is not sufficiently compelling to reduce the severity of the sanctions warranted in this case.

The remaining mitigating factor to consider is petitioner's return of unearned fees to Runke and restitution to the clients involved in the prior disciplinary proceeding, Bar Miscellaneous No. 4695. Little significance is attached, however, to restitution made to clients under pressure of disciplinary proceedings. (*Rosenthal* v. *State Bar, supra,* 43 Cal.3d at p. 664; see also *Warner* v. *State Bar* (1983) 34 Cal.3d 36 [192 Cal.Rptr. 244, 664 P.2d 148].) Petitioner made no effort at restitution until months after an arbitration award had been obtained from the Sacramento Bar Association, a small claims court action had been filed and the instant State Bar proceedings were in progress. While we do note with approval that restitution has at last been made, we cannot attach any great mitigating weight to petitioner's repayment of unearned fees to Runke. In Bar Miscellaneous No. 4695, petitioner made restitution only after an order to do so by this court, and even then he failed to make such payment within the time ordered. Again, little significance can be attached to such reluctant efforts to return to clients unearned funds improperly retained.

These moderate mitigating factors must be considered in the light of the substantial aggravating factors presented. Our determination must reflect petitioner's substantial record of prior discipline, including the fact that even now he remains on suspension, the evidence of his multiple acts of wrongdoing, his definite pattern of misconduct, the significant harm his misconduct caused Runke and his lack of cooperation in the investigation of Runke's complaint. (Std. 1.2(b).) These substantial aggravating factors

clearly overwhelm the mitigating factors and support the disbarment recommendation.

Further, because the lesser sanctions of probation and suspension "have proven inadequate to prevent petitioner from continuing his injurious behavior towards the public" (*Gary* v. *State Bar, supra,* 44 Cal.3d at p. 829), we would be remiss in our duty to the public, the legal profession and the courts if we were to approve any sanction less severe than disbarment. (*McMorris* v. *State Bar, supra,* 35 Cal.3d at p. 85; std. 1.7.) At the same time, we acknowledge and appreciate petitioner's honest acceptance of his wrongdoing and his sincere expression of contrition. Had petitioner been able to initiate his considerable efforts at rehabilitation before being placed on over three years' suspension, there is little doubt the conduct at issue, standing alone, would not warrant discipline as severe as disbarment. Unfortunately, such is not the case: here petitioner has exhausted his opportunities for leniency.

Accordingly, we order petitioner disbarred from the practice of law and his name stricken from the practice of law and his name stricken from the roll of attorneys.[16] Since petitioner complied with rule 955 of the California Rules of Court following his suspension in August, 1987, there is no need to again order compliance in connection with this matter. This order is effective upon the finality of this opinion.

---

[16] We note that pursuant to Rules of Procedure of the State Bar, rule 662, petitioner may apply to the State Bar for reinstatement three years after the effective date of disbarment. If, as is to be hoped, petitioner is able to continue his successful rehabilitation during this period, we encourage him to apply for early reinstatement.